IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAYSEAN BARBER, | |
| Plaintiff, | 8:24CV46 |
| vs. | |
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JAMES LINDER, DALTON J. NELSON, ANN PEARSON, Dr.; ANDREW R. BARNETT, JENNIFER N. COUGILL, and LATISHA L. MCCANTS, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion to Amend Complaint, Filing No. 9. Upon review, the Court finds that the Motion to Amend the Complaint should be granted and Plaintiff's signed Proposed Amended Complaint (hereinafter "Complaint"), Filing No. 9 at 2–10, shall be the operative pleading in this case. The Court now conducts an initial review of Plaintiff's in forma pauperis Complaint pursuant to 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff filed his Complaint alleging violations of 42 U.S.C. §§ 1985 and 1986. Filing No. 9 at 2. Plaintiff sues the Chief Executive Officers of Nebraska Medicine and the Bellevue Medical Center and several employees of both Nebraska Medicine and the Bellevue Medical Center for alleged injuries arising out of Plaintiff's visits to the emergency room ("ER") of Nebraska Medicine at 4350 Dewey Avenue in Omaha, Nebraska, on November 8, 2023.

On that date, Plaintiff alleges he was at his job as a paralegal for an Omaha law firm when he "all-of-a-sudden[] experienced a head injury," which caused him "a significant amount of pain in his brain, confusion, . . . trouble speaking and thinking," and caused him to believe "he was somehow being harmed by his coworkers." *Id.* at 3–4, ¶¶ 14–16. Plaintiff then quit his job and walked to the Nebraska Medicine ER where he informed the front desk staff "he felt that he was experiencing issues with his central nervous system." *Id.* at 4, ¶ 18. Plaintiff was directed to "go to a psychiatric area of the hospital," and, while in that area, Plaintiff "heard male staff members saying how he would be raped everyday while he was in the psychiatric ward and that he would never get out." *Id.*, ¶¶ 19–20. Due to the staff members' words, Plaintiff left the hospital and tried to walk home, "but due to his brain injury, he did not know how to get home." *Id.*, ¶ 21.

Plaintiff then walked back to the ER where he again tried to sign his consent to be treated but "had trouble doing so given his condition." *Id.*, ¶ 22. Plaintiff was asked to sit in a wheelchair near the ER entrance where defendant Jane Doe 1 asked him "to tell her the reason for his visit" and "placed emphasis on the word 'tell,' indicating that [Plaintiff] was a tattle teller, so to speak." *Id.*, ¶¶ 24–25. Plaintiff's ability to speak became more impaired, and, "while trying to explain his experience to Jane Doe 1, he became incapacitated, meaning that he was unable to move his limbs and body." *Id.*, ¶29. While in this state, Plaintiff could hear what was being said and heard Jane Doe 1 state, "[H]is eyelids are still moving, that's good enough." *Id.* at 5, ¶ 31. Plaintiff remained in this state for approximately five minutes during which time he "urinated on himself as a result of his laxed muscles." *Id.*, ¶¶ 32–33.

Plaintiff was then moved "between the room adjacent to the visiting room and the visiting room, where he was made to sit in various chairs, only to leave

urine stains in the chairs," before he was seen by defendant Jennifer Cougill ("Cougill"), a psychiatrist. *Id*., ¶ 34. Cougill asked Plaintiff questions and told him "that he could leave or put on a hospital gown and go to the psychiatric ward." *Id*., ¶ 35.

Around this same time, Plaintiff again heard staff making comments that he would be raped while in the psychiatric ward and would never get out, so Plaintiff tried to leave again but returned to Nebraska Medicine when he could not find his way home. Plaintiff went to a different area of the hospital where "[h]e was told to sit in a chair, and an ambulance was called." *Id*., ¶ 38. Plaintiff was taken back to the ER where defendant Jane Doe 2 took Plaintiff's vitals. While taking Plaintiff's vitals, Jane Doe 2 told Plaintiff to "tell her his situation, while also placing emphasis on the word 'tell'" and then told him, "Say the word perfect and this will all go away." *Id*., ¶¶ 41, 43. Plaintiff remained silent, and "Jane Doe 2 then stated, '[F]ine, you don't want this to stop," and she "show[ed] her frustration at [Plaintiff] for not relenting." *Id*., ¶ 45.

Plaintiff was then taken to another room where he cooperated with defendant Jane Doe 3, a nurse, in taking some labs. "Jane Doe 3 had only filled the vacutainer a quarter of the way before pretending that she could not continue to fill said vacutainer." *Id*. at 6, ¶ 48. Plaintiff tried to assist Jane Doe 3 by pointing to another vein, "but she did not want to finish and stated that she would be back." *Id*., ¶ 49. While waiting for Jane Doe 3 to return, defendant Latisha McCants ("McCants") entered the room and assessed Plaintiff by asking a series of questions. McCants "noted that he was not able to articulate his words," "that he was suffering from a mental status change and had urinated his pants." *Id*., ¶¶ 51–52. "Despite the head injury, [McCants] gave [Plaintiff] the option of either going to the psychiatric ward or leaving." *Id*., ¶

53. After several minutes, Plaintiff became "clearer minded, and he once again decided to leave." *Id*., ¶ 54. As he was gathering his things to leave, Plaintiff noticed that a paycheck from his law firm job was missing and had previously seen a male staff member at the hospital looking at his check," but when he asked the receptionists about it, "they stated there 'is no paycheck.'" *Id*., ¶¶ 55–56.

Plaintiff made it home but was still unable to think clearly the next day. Plaintiff called his sister for help, and she took him to Lasting Hope Recovery Center where Plaintiff "spent approximately five days before being released in better condition." *Id*., ¶ 58. Since this incident, Plaintiff "has had several instances where he has visited emergency rooms due to the same or similar effects on his brain with regard to impairment of thought and speech" and "has also experienced physical symptoms, such as numbness in his limbs, bodily pains, and serious and random sleepiness in connection with this incident." *Id*. at 6–7, ¶ 59. Prior to this incident, Plaintiff "experienced an acute ear infection in his left ear, called otitis media, for which he sought medical treatment at Nebraska Methodist Hospital's emergency department on October 2, 2023." *Id*. at 7, ¶ 60. After this ear infection, Plaintiff "started hearing people's voices in his left ear," and, on November 8, 2023, these voices "were telling him not to go to Nebraska Medicine. That it would be 'over with' if he goes there, and that he would be raped in the psychiatric unit and that he would never get out," which "is similar language to that spoken by the staff in the emergency room as described above." *Id*., ¶¶ 60–63.

Based on these events, Plaintiff alleges Defendants violated his "right to bodily integrity" by "causing the psychological and physical impairments suffered by [Plaintiff] during this incident," "determining that he needed psychiatric help rather than assessment and treatment for a brain injury," and

4

"hid[ing] the facts of [Plaintiff's] condition by making it appear as though [Plaintiff] was suffering from a mental disorder where it was evident that a brain injury had been incurred upon [Plaintiff]." *Id.* at 7–8, ¶¶ 64–71. As relief, Plaintiff seeks monetary damages and an injunction preventing defendants from "causing psychological and physical harm to [Plaintiff]" and "from continued interference with [Plaintiff's] enjoyment of self, however this may be occurring." *Id.* at 8–9, ¶ 72.

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at

5

849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon,* 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

The Court has carefully reviewed Plaintiff's Complaint, keeping in mind that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel,* 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted); *see also Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); *Cunningham v. Ray,* 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

Plaintiff's Complaint, even construed liberally, does not state a claim for relief. Plaintiff cites 42 U.S.C. §§ 1985 and 1986 as his bases for relief. To show a conspiracy under § 1985, a plaintiff must show that the defendants conspired "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws." *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 684 (8th Cir. 2012) (quoting *Larson ex rel. Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc)). The "purpose" element requires "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Dornheim v. Sholes*, 430 F.3d 919, 924 (8th Cir. 2005) (alteration in original) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68, (1993)).

Plaintiff's allegations fail to allege the existence of the necessary class-based "invidiously discriminatory animus" required by § 1985. *See Larson*, 76 F.3d at 1454 (discussing 42 U.S.C. § 1985). Plaintiff's allegations likewise fail to allege any facts indicating that the other defendants had actual knowledge of a § 1985 conspiracy. *See Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) (to maintain 42 U.S.C. § 1986 action, defendant must have actual knowledge of § 1985 conspiracy). Thus, even construed liberally, Plaintiff fails to state a claim under 42 U.S.C. §§ 1985 or 1986.

The Court also finds this action should be dismissed on initial review because Plaintiff's allegations that the defendants caused his condition on November 8, 2023, and continue to cause him psychological and physical harm are unsupported by any rational facts and appear entirely baseless, fanciful, fantastic, or delusional. *See Denton v. Hernandez*, 504 U.S. 25, 32-34 (1992) (court may dismiss complaint of plaintiff proceeding in forma pauperis as frivolous and may disregard clearly baseless, fanciful, fantastic, or delusional

factual allegations); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing complaint as frivolous and stating that "[a] complaint is frivolous when it lacks an arguable basis in either law or fact") (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  Plaintiff will not be granted leave to file an amended complaint because any such amendment would be futile.  *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) ("frivolous claims are futile"); *see also Phillips v. Three Unknown Police Officers*, No. 4:19-CV-2922 RLW, 2020 WL 736237, at *3 (E.D. Mo. Feb. 13, 2020) (dismissing pro se complaint as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2) where plaintiff admitted that his mental illness "symptoms are being triggered" and plaintiff's "allegations concerning his estranged wife's activities in his house, and his belief that he is being followed by people conspiring to commit murder" were not viable and rose "to the level of the irrational or the wholly incredible." (quoting *Denton*, 504 U.S. at 33)); *Wells v. F.B.I.*, No. 4:12CV1200 JCH, 2012 WL 2905131, at *1 (E.D. Mo. July 16, 2012) (dismissing in forma pauperis complaint where "factual allegations in the complaint are obviously derived from a delusional paranoia").

## IV.  CONCLUSION

Plaintiff's Complaint is subject to preservice dismissal because it fails to state a claim upon which relief may be granted and is frivolous.

IT IS THEREFORE ORDERED that:

1.    Plaintiff's Motion to Amend Complaint, Filing No. 9, is granted and the Plaintiff's Proposed Amended Complaint, Filing No. 9 at 2–10, shall be the operative pleading in this case.

2.    This matter is dismissed without prejudice as frivolous.

3.    The Court shall enter judgment by separate document.

Dated this 10th day of February, 2025.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge